# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TERESA GIBBONS,**

        **Plaintiff,**

v.                                                    **Case No: 6:11-cv-1894-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Teresa Gibbons (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her applications for disability benefits and supplemental security income (hereafter "Applications"), which alleged a disability onset date of October 13, 2004. Doc. No. 1. Based on the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.    MEDICAL AND OPINION EVIDENCE**

    **A. Deborah Carter, Ph.D.**

On January 24, 2009, Deborah Carter, Ph.D., a non-examining consultant, completed a mental residual functional capacity assessment. R. 241-43. In section I, titled summary conclusions, Dr. Carter indicated that Claimant is not significantly limited in the ability to understand, remember and carry out very short and simple instructions. R. 241. Dr. Carter found that Claimant is moderately limited in the ability to understand, remember and carry out detailed instructions, as well as maintain attention and concentration for extended periods of time. R. 241. Dr. Carter also found that Claimant is moderately limited in the ability to

complete a normal work week and workday without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. R. 242. In all other areas of sustained concentration and persistence, social interaction and adaptation, Dr. Carter indicated that Claimant is not significantly limited. R. 241-42.

In section III, titled functional capacity assessment, Dr. Carter opined that Claimant can understand, remember and carry out routine instructions and procedures, as well as make basic decisions. R. 243. Dr. Carter determined that Claimant can cope with routine activities, adapt to change and avoid hazards. R. 243. Dr. Carter stated that Claimant can concentrate to complete tasks that she starts within her physical and pain limits. R. 243. Dr. Carter indicated that Claimant can go out, but is limited by dizziness. R. 243. In light of these findings, Dr. Carter opined that, notwithstanding credible evidence of a cognitive disorder, Claimant retains the capacity to function mentally and socially to perform activities of daily living and interact with others. R. 243.

**B.  Steven K. Abraham, Psy.D.**

On September 2, 2008, Steven K. Abraham, Psy.D., a consultative examiner, conducted a general personality evaluation and assessment. R. 419-23. Claimant reported that she has had a depressed mood every day for the past four to five years that manifests in wanting to stay in bed all day, guilt, fatigue, tearful episodes, rumination, low self-esteem, varied appetite and difficulty concentrating. R. 419. Claimant reported that she experiences excessive anxiety or worry, has difficulty controlling her worry, has difficulty falling and staying sleep, experiences racing thoughts, has restless unsatisfying sleep, is easily fatigued and has difficulty concentrating. R. 419. Claimant also reported having panic attacks and posttraumatic stress disorder symptoms as a result of physical abuse during her first marriage. R. 419. Claimant reported being unable to

work due to chronic pain in her neck and back, and swelling in her hands when she writes. R. 420.

Claimant indicated that she can only complete simple tasks, with the aid of a to-do list, such as eating, grooming, washing clothes, washing dishes and using a light weight sweeper broom. R. 420. Claimant reported being able to perform basic house cleaning tasks, manage her finances, shop for necessities and drive. R. 420. Claimant indicated that her medications cause drowsiness. R. 420.

Dr. Abraham conducted a Millon Clinical Multiaxial Inventory-III (hereafter "MCMI-III") and indicated that Claimant's response style suggested a tendency to overstate her concerns and her scaled scores may be exaggerated. R. 422. Dr. Abraham noted that the test results indicated Claimant can function on a satisfactory basis, but may experience periods of marked emotional, cognitive and behavioral dysfunction. R. 422. Dr. Abraham also noted that Claimant's scores suggest she has an anxiety disorder and has experienced traumatic event(s). R. 422. Dr. Abraham diagnosed Claimant with major depressive disorder that is recurrent and severe with psychotic features, posttraumatic stress disorder, and chronic panic attacks without agoraphobia. R. 423. Dr. Abraham assessed Claimant with a global assessment of functioning (hereafter "GAF") score of 55. R. 423. Dr. Abraham gave a guarded prognosis and indicated that Claimant can manage her finances. R. 423. Dr. Abraham recommended Claimant regularly see a mental health worker, obtain regular psychiatric evaluations from a psychiatrist for medication management and continue receiving medical care for her physical problems. R. 423.

On September 10, 2008, Dr. Abraham completed a medical source statement of Claimant's ability to do work-related activities. R. 424-26. Dr. Abraham indicated that Claimant is mildly limited in the ability to understand, remember and carry out simple

instructions, and make judgments on simple work-related decisions. R. 424.[1] Dr. Abraham opined that Claimant is moderately limited in the ability to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions. R. 424.[2] Dr. Abraham explained that his mental status examination "did not suggest any severe impairment to follow through on simple or complex instructions and her judgment appear[s] adequate." R. 424.

Dr. Abraham opined that Claimant is moderately limited in the ability to appropriately interact with the public, supervisors and co-workers, and appropriately respond to usual work situations and changes in a routine work setting. R. 425. Dr. Abraham explained that the MCMI-III results suggest that Claimant "experiences an irritability which expresses itself at times as being argumentative, defensive and angry outbursts which may affect her work relationships and environment." R. 425. Dr. Abraham noted that Claimant did not "mention any problem related to work or relationships except for physical health concerns." R. 425.

### C. Rosimeri Clements, Psy.D.

On December 30, 2008, Rosimeri Clements, Psy.D., a consultative examiner, conducted a disability evaluation of Claimant for the Commissioner. R. 449-54.[3] Claimant reported depression beginning in 2003, with current symptoms of daily sadness with crying episodes, poor appetite, poor sleep, feelings of hopelessness and worthlessness, and poor concentration. R. 449. Claimant indicated that she has panic attacks three to four times a week where she experiences chest pain, shortness of breath, hot flashes, dizziness, sees spots and fears she will die. R. 449. Claimant stated that her fibromyalgia causes pain and difficulty moving around. R.

---

[1] The medical source statement form defined "mild" as a "slight limitation in this area, but the individual can generally function well." R. 424.

[2] The medical source statement form defined "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." R. 424.

[3] The examination was conducted and report prepared by Cherie N. Martin, Psy.D., a post-doctoral resident. R. 453. However, both were done under the supervision of and reflect the opinion of Dr. Clements. R. 453-54.

450. Claimant also reported that her COPD causes her to cough, wheeze and makes it difficult for her to walk long distances. R. 450.[4]

Dr. Clements noted that Claimant limits her driving because her focus waxes and wanes. R. 451. Dr. Clements observed Claimant shift in her seat due to pain, walk slowly with a limp and exhibit fine motor shakes, but no tremors. R. 452. Dr. Clements indicated that Claimant was alert, well oriented, exhibited no signs of psychosis, had no memory impairment, had logical and coherent speech and thought processes, and her affect was of full range. R. 452. Dr. Clements noted that Claimant can manage her finances, cannot maintain friendships due to mistrust, has an inactive social life, and spends her day caring for the dog, watching television and doing light housecleaning. R. 452. Dr. Clements indicated that Claimant's sleep and appetite are disrupted by her depression and anxiety symptoms, and her activities of daily living are inappropriate. R. 452.

Dr. Clements administered the Minnesota Multiphasic Personality Inventory-2 and indicated that Claimant understood the test questions but her "validity scores were not within normal limits." R. 452. Dr. Clements stated that Claimant's scores were indicative of a person "attempting to exaggerate her symptoms." R. 452. Dr. Clements diagnosed Claimant with major depressive disorder that is recurrent and mild, anxiety disorder, alcohol dependence whose physiological dependence is in full remission and nicotine dependence with physiological dependence. R. 453. Dr. Clements assessed Claimant with a GAF score of 55. R. 453. Dr. Clements recommended Claimant obtain health insurance, therapy for her depression and anxiety, a psychiatric evaluation if her symptoms persist after therapy, discontinue smoking and participate in a twelve-step program to maintain sobriety. R. 453.

---

[4] COPD stands for chronic obstructive pulmonary disease.

On January 5, 2009, Dr. Clements completed a medical source statement regarding Claimant's ability to perform work-related activities. R. 456-58.[5] Dr. Clements opined that Claimant is not limited in the ability to understand, remember and carry out simple instructions, and make judgments on simple work-related decisions. R. 456. Dr. Clements indicated that Claimant is moderately limited in the ability to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions. R. 456. Dr. Clements explained that Claimant "was able to follow simple instructions in the office. She reported difficulty learning work tasks. Additionally, she stated she needed to write down complicated work tasks to ensure she correctly completed the task." R. 456.

Dr. Clements opined that Claimant is moderately limited in the ability to appropriately interact with the public, supervisors and co-workers, and appropriately respond to usual work situations and changes in a routine work setting. R. 457. Dr. Clements noted that Claimant's past employment typically required interacting with the public, she was able to appropriately interact with the evaluator and her "depressive symptoms would interfere with her motivation to complete tasks." R. 457. Dr. Clements also indicated that Claimant's fibromyalgia causes pain and interferes with her mobility. R. 457. Dr. Clements stated that Claimant's COPD restricts the distance she can walk. R. 457. Dr. Clements observed that Claimant shifted in her seat due to pain and walked slowly with a limp. R. 457.

**D. Pastor Alan Holley**

On February 8, 2009, Pastor Alan Holley wrote a letter on Claimant's behalf. R. 442. Pastor Holley stated that Claimant has difficulty staying focused and alert. R. 442. Pastor Holley indicated that Claimant has difficulty getting around due to her muscle disorder, with

---

[5] The medical source statement form was completed by both Drs. Clements and Martin, and contains the same definitions of "mild" and "moderate" as the form completed by Dr. Abraham. *See* R. 424, 456, 458.

some days being worse than others. R. 442. Pastor Holley also indicated that Claimant cannot sit for very long and needs to move or reposition herself to get comfortable. R. 442.

## II.     ADMINISTRATIVE PROCEEDINGS

On April 27, 2006, Claimant filed her Applications. R. 91-93, 475-79. The Applications were denied initially and on reconsideration. R. 40-41, 470, 474. On March 22, 2007, Claimant requested a hearing before an administrative law judge (hereafter "ALJ"). R. 61-62. Claimant and a vocational expert testified at the February 19, 2009 hearing. R. 482-558. Claimant testified that she earned a high school diploma, lives with her husband and has two children. R. 491. Claimant testified that her husband works as a journeyman/plumber and she receives food stamps. R. 493.

Claimant listed her prior work as cashier, customer service representative, fruit cutter, office manager, dispatcher at a freight company, freight clerk and receptionist. R. 495-505. Since October 13, 2004, Claimant has not worked or volunteered. R. 506. Claimant stated that she suffers from fibromyalgia, loss of feeling in her right hand, emphysema, COPD, anxiety, and depression. R. 507, 512, 515, 519-20. Claimant indicated that she is prescribed medication for her fibromyalgia, emphysema, COPD, anxiety and depression, and uses a brace for her right hand. R. 510, 513, 516, 521. Claimant presented a list of her medications at the hearing: Protonix, Advair, Levsin, Seroquel, Cymbalta, Vytorin, Restoril, Neurontin, Klonopin and Spiriva. R. 522. Claimant testified that three medications make her groggy and sleepy. R. 523.[6]

Claimant testified that she can bathe, dress, sweep, prepare a microwave dinner or sandwich, vacuum slowly, wash dishes, fill a dishwasher, perform laundry with help, drive up to twenty miles in an emergency and dust up to fifteen minutes before needing to sit down. R. 524-

---

[6] Claimant did not identify the medications that make her groggy and sleepy, instead stating whichever ones listed grogginess and sleepiness as a side effect. R. 523.

27. Claimant stated that she cannot mop or take out the trash, but can lift up to ten pounds, although she cannot carry it for very long. R. 525, 528-29. Claimant testified that she occasionally e-mails and also reads her Bible. R. 530. Claimant attends church and visits with her in-laws. R. 531-32. Claimant indicated that she can walk up to 150 feet before she gets out of breath, primarily spends her day watching television, and has problems sleeping. R. 535. Claimant also indicated that she sometimes has difficulty paying attention, has memory problems and cries or gets anxiety attacks when stressed. R. 536-37.

The vocational expert classified Claimant's past work as cashier, customer service, dispatcher, freight clerk, receptionist, fruit cutter and counter attendant. R. 541. The ALJ asked the vocational expert whether a person of Claimant's age, education and work experience could perform Claimant's past work with the following limitations:  limited to medium range of exertion; avoids using ropes, scaffolds and ladders exceeding six feet; avoids prolonged exposure to temperatures less than thirty degrees, wetness or humidity; occasional pushing and pulling with the lower right extremity if the pedal requires more than five pounds; occasional kneeling; limited to simple and routine tasks; no executive or management decisions; and no job requiring a skill greater than SVP 3. R. 543.[7] The vocational expert testified that such a person could work as a cashier, dispatcher, fruit cutter and counter attendant. R. 543-44. The vocational expert also testified that such a person could also work as a kitchen helper at the medium exertion level, ticket seller at the light exertion level, and food and beverage order clerk at the sedentary level. R. 544-45.

On July 27, 2009, the ALJ issued his decision. R. 21-30. The ALJ found that Claimant suffers from the severe impairments of fibromyalgia, COPD, and anxiety and depressive disorder. R. 23. The ALJ found that Claimant's allegations of right hand numbness, cardiac

---

[7] SVP stands for specific vocational preparation.

condition, memory loss, cognitive disorder and right knee pain are non-severe impairments. R. 24. In determining that Claimant's mental impairments do not meet a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ found that Claimant has mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with concentration, persistence or pace, and has had no episodes of decompensation of extended duration. R. 25.

The ALJ determined that Claimant has the residual functional capacity (hereafter "RFC") to perform medium work with the following limitations: occasional kneeling; occasional pushing and pulling with her lower right extremity, including operating pedals unless the pedal requires less than five pounds; avoid climbing ropes and scaffolds, and ladders over six feet; avoid prolonged exposure to temperatures less than thirty degrees, wetness and humidity; limited to simple and routine tasks; no executive or management decisions; and no jobs that require an SVP of 4 or higher. R. 26. The ALJ determined that Claimant was not credible to the extent her testimony was inconsistent with his RFC finding because Claimant gave inconsistent statements to doctors, Claimant's allegations of fatigue and shortness of breath were not supported by the medical evidence, the evidence indicated that Claimant exaggerates her symptoms and some doctors suggested that Claimant may be malingering. R. 27-28.

In reaching his RFC determination, the ALJ gave "significant weight" to Dr. Martin's medical source statement, wherein Dr. Martin concluded that Claimant can "understand, remember, and carry out simple instructions, and has the ability to make judgments on simple work-related decisions." R. 28 (internal citation omitted).[8] The ALJ gave Dr. Abraham's opinion that Claimant did not have a severe impairment that would prevent following simple and complex instructions "substantial weight." R. 29. The ALJ found that Dr. Carter's opinion that

---

[8] As noted earlier, Dr. Martin completed the disability evaluation and medical source statement in conjunction with Dr. Clements. *See* R. 453-54.

Claimant has a cognitive disorder is not supported by the evidence, but agreed with Dr. Carter that Claimant's "limitation does not prevent her from understanding, remembering, and completing simple and routine instructions; she is able to socially interact with the general public; and she can adapt to changes in the workplace and avoid hazards." R. 29 (internal citation omitted).

Based on his RFC determination and the vocational expert's testimony, the ALJ found that Claimant can perform her past relevant work as a cashier, dispatcher, fruit cutter and counter attendant. R. 30. The ALJ also noted that the vocational expert identified other jobs in the medium, light and sedentary levels of exertion that Claimant can perform given her RFC. R. 30. The ALJ determined that Claimant is not disabled. R. 30.

### III.   LEGAL STANDARDS

#### A.  FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to

>determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## IV. ANALYSIS

Claimant raises two arguments on appeal. First, Claimant argues that the ALJ erred in determining she has the RFC to perform "medium work with additional nonexertional limitations, particularly being limited to simple and routine tasks" because the ALJ failed to include and consider all of her limitations in determining her RFC. Doc. No. 28 at 10. Second, Claimant argues that the ALJ did not consider the side effects of her medications. Doc. No. 28 at 16.

### A. The ALJ's RFC

Claimant contends the ALJ failed to consider and include all of the limitations contained in Drs. Carter, Abraham and Clements' opinions and Pastor Holley's letter in determining her RFC. Doc. No. 28 at 12-16. Specifically, Claimant asserts that the ALJ did not account for Drs. Carter, Abraham and Clements' opinions that Claimant is moderately limited in understanding, remembering and carrying out detailed or complex instructions; Dr. Carter's opinion that Claimant is moderately limited in the ability to complete a normal work week and workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; or Drs. Abraham and Clements' opinions that Claimant is moderately limited in interacting appropriately with the public, supervisors or co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. Doc. No. 28 at 12-14. Claimant also asserts that the ALJ did not account for Drs. Abraham and Clements' GAF scores of 55. Doc. No. 28 at 13-14. Claimant further points out that the ALJ did not account for the limitations contained in Pastor Holley's letter. Doc. No. 28 at 15-16.

In regard to Claimant's moderate limitations in understanding, remembering and carrying out detailed or complex instructions, the ALJ limited Claimant to simple and routine tasks in the hypothetical posed to the vocational expert. R. 543. This limitation was supported by Drs. Carter, Abraham and Clements' opinions that Claimant can understand, remember and carry out simple instructions. R. 241, 243, 424, 456. It is also supported by Dr. Carter's opinion that Claimant can understand, remember and carry out routine procedures and make basic decisions. R. 243. By limiting Claimant to simple and routine tasks, the ALJ implicitly excluded work that required understanding, remembering and carrying out complex or detailed instructions. In effect, the ALJ accounted for Claimant's moderate limitations in understanding, remembering and carrying out complex or detailed instructions by limiting her to simple and routine tasks. What, if any, error was committed by the ALJ failing to explicitly account for these moderate limitations is not explained by Claimant and is not apparent to the Court. Furthermore, such error is harmless. *See Miller v. Barnhart*, 182 F. Appx. 959, 964 (11th Cir. 2006) (error is harmless when the correct application of the regulations would not contradict the ALJ's ultimate findings).

In regard to Claimant's moderate limitation in completing a normal workday or work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, Dr. Carter made this finding by checking the corresponding box in section I of her RFC assessment. *See* R. 242. Checking a box, in section I of the RFC assessment form, to indicate a claimant has a moderate limitation is merely an aid that indicates the claimant's capacity is impaired. *Jones v. Comm'r of Soc. Sec.*, 478 F. Appx. 610, 612 (11th Cir. 2012) (citing Programs Operations Manual DI § 24510.060(B)(2)). It "does not indicate the degree and extent of the limitation." *Id.* Rather,

after checking the boxes in section I of the RFC assessment form, the doctor is required to provide an actual RFC assessment in section III. *Id.* Thus, checking boxes in section I is merely an aid that does not reflect the doctor's RFC assessment. The doctor's RFC assessment is provided in section III of the RFC assessment form.

In section I, Dr. Carter checked the box indicating that Claimant has a moderate limitation in completing a normal workday or work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. R. 242. Notwithstanding this moderate limitation, Dr. Carter opined, in section III, that Claimant can perform tasks that involve routine instructions, routine procedures and basic decision making. R. 243. Dr. Carter also opined that Claimant can maintain the concentration necessary to complete such tasks. R. 243. Accordingly, the ALJ adequately accounted for this moderate limitation by limiting Claimant to simple and routine tasks, as reflected in section III of Dr. Carter's RFC opinion.

In regard to Claimant's moderate limitations in interacting appropriately with supervisors, co-workers and the public, as well as responding to changes in a routine work setting, neither Dr. Abraham nor Dr. Clements opined that these limitations affect Claimant's ability to perform simple and routine work. Dr. Abraham noted that Claimant did not mention having any problems related to work or relationships. R. 425. Dr. Clements indicated that Claimant's prior employment typically involved interacting with the public and she interacted appropriately with the evaluator. R. 457. Further, Drs. Abraham and Clements' medical source statements defined "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." R. 424, 456. Thus, Drs. Abraham and Clements' opinions reflect that Claimant can satisfactorily interact with supervisors, co-workers and the public, as

well as respond to changes in a routine work setting, notwithstanding her moderate limitations in these areas. Furthermore, Drs. Abraham and Clements did not indicate that Claimant's ability to perform simple and routine tasks was adversely affected by these moderate limitations. In fact, they noted that Claimant failed to mention any problems related to work or relationships and appropriately interacted with the evaluator. R. 425, 457. An ALJ is not required to include non-exertional impairments in his RFC when the medical record does not support a finding that the non-exertional impairments affect the claimant's ability to work. *See Vesy v. Astrue*, 353 F. Appx. 219, 223 (11th Cir. 2009). Accordingly, the ALJ did not err by failing to explicitly account for Claimant's moderate limitations in these areas.

Drs. Abraham and Clements recorded GAF scores of 55. R. 423, 453. A GAF score between 51-60 indicates moderate symptoms or difficulty in social, occupational, or school functioning. *See Zonca v. Comm'r of Soc. Sec.*, No. 8:10-cv-2330-T-23MAP, 2012 WL 275518 at *3 (M.D. Fla. Jan. 23, 2012). However, "GAF scores do not denote functional mental limitations." *Id.* at *4; *see also Stottler v. Astrue*, No. 8:09–cv–1719–T–TBM, 2010 WL 3833679 at *8 (M.D. Fla. Sept. 28, 2010) (a low GAF score does not translate into a specific finding regarding functional limitations). Claimant does not indicate how these GAF scores result in any functional limitations beyond those found by the ALJ. Accordingly, the ALJ did not err in failing to account for these GAF scores in the hypothetical posed to the ALJ. *See Zonca*, No. 8:10-cv-2330-T-23MAP, 2012 WL 275518 at *4 (finding ALJ properly determined claimant's RFC after offering a detailed hypothetical to the vocational expert where claimant failed to show how her GAF scores correlated to specific work limitations).

In determining whether a claimant has met her burden of proving disability, the Commissioner considers the medical record, subjective evidence of pain and disability (e.g.,

testimony from the claimant or lay persons), and the claimant's age, education, and work history. *Tienbier v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). When a claimant presents third party lay testimony in support of her claim and the ALJ does not make an explicit credibility determination, the "implication must be obvious to the reviewing court." *Id.* at 1256.

In *Osborn v. Barnhart*, 194 F. Appx. 654, 666 (11th Cir. 2006), the claimant's wife submitted a third party statement that described the claimant's conditions and daily activities. Although the ALJ did not specifically state the credibility given to claimant's wife's statements, the Eleventh Circuit determined that the ALJ's "specific and explicit" credibility determination as to the claimant's testimony sufficiently implied a rejection of claimant's wife's testimony. *Id.*

In this case, the ALJ found Claimant's testimony was not credible to the extent it conflicted with his RFC assessment because the medical record contains conflicting statements about Claimant's medical complaints, does not support her allegation of shortness of breath and fatigue, and suggests Claimant exaggerates her symptoms or is malingering. R. 27-28. Pastor Holley wrote a letter indicating that Claimant has difficulty staying focused and alert, has a muscle disorder that makes it difficult for her to get around, cannot sit for very long, needs to move to get comfortable and has some days that are worse than others. R. 442. Although the ALJ did not explicitly state the weight given to Pastor Holley's statements, the ALJ's "specific and explicit" determination that Claimant is not credible sufficiently implies a rejection of Pastor Holley's statements in his letter. *See id.* Thus, the ALJ did not err in failing to explicitly state the weight given to Pastor Holley's letter.

### B. Medication Side Effects

Claimant argues that the ALJ failed to consider her medication side effects despite the fact that the medical record documents "significant side effects" and she testified that her

medications maker her dizzy, sleepy and unable to focus. Doc. No. 28 at 16. When a represented claimant's testimony simply "raises a question about the side effects of medications," but the claimant does not "otherwise allege that the side effects contribute to the alleged disability," the ALJ does not err in failing to inquire further into a claimant's medication side effects. *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. Appx. 236, 238 (11th Cir. 2011).

In function reports submitted to the Commissioner, Claimant indicated that her medications cause dizziness, sleepiness and weakness. R. 103, 112. Dr. Abraham noted that Claimant experienced drowsiness. R. 421. At the hearing, Claimant testified that three unidentified medications cause her to feel groggy and sleepy. R. 523. However, Claimant did not indicate how these side effects impact her ability to work or otherwise contribute to her alleged disability. On appeal, Claimant simply asserts that the ALJ should have inquired further because her "side effects may have had some effect on [her] ability to perform her past relevant work." Doc. No. 28 at 17. Claimant's testimony simply raised a question about her medication side effects and, as a result, the ALJ did not err in failing to consider the side effects of Claimant's medications on her ability to perform her past relevant work. *See id.*; *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (noting that ALJ did not err in failing to inquire about claimant's medication side effects where claimant did not allege that her side effects contributed to her disability and the only record evidence of side effects was claimant's statement that her medication made her drowsy); and *Holley v. Chater*, 931 F. Supp. 840, 850 (S.D. Fla. 1996) (finding that claimant's testimony that her medications make her dizzy and drowsy insufficient to support a finding of disability).

**V.     CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on February 26, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate
PO Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Douglas Wilson, Branch Chief
Haila Kleinman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Douglas W. Abruzzo
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224